IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NACS, NATIONAL RETAIL FEDERATION, FOOD MARKETING INSTITUTE, MILLER OIL CO., INC., BOSCOV'S DEPARTMENT STORE, LLC, and NATIONAL RESTAURANT ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,<br>Defendant. | Case No. 1:11-cv-02075 (RJL) |

**DEFENDANT BOARD OF GOVERNORS OF THE FEDERAL
RESERVE SYSTEM'S SUPPLEMENTAL BRIEF
REGARDING AUTHORITY TO ISSUE AN INTERIM FINAL RULE**

By minute order dated August 14, 2013, and at the August 14th and 21st status conferences before the Court, the Court requested supplemental briefing on the issues of: (i) the Board's authority to issue an interim final rule ("IFR") replacing those portions of the Board's Rule regarding Debit Card Interchange Fees and Routing, 76 Fed. Reg. 43,394 (July 20, 2011) (codified at 12 C.F.R. §§ 235.1-235.10) (the "Rule") vacated by the Court's July 31, 2013 Memorandum Opinion and Order; and (ii) the period of time this Court's stay should remain in place to permit the Board to promulgate such an IFR.

An "interim final rule" is the term used to describe a rule promulgated by an agency without the normal pre-effective-date opportunity for notice and comment under the Administrative Procedure Act ("APA"). An IFR is a legally binding rule that remains in effect unless and until replaced by a subsequent rulemaking. *See generally* Michael Asimow, *Interim-*

*Final Rules: Making Haste Slowly*, 51 Admin. L. Rev. 703 (1999).  The APA contains specific provisions that limit the circumstances under which an agency is permitted to issue a rule without notice and comment.  5 U.S.C. § 553(b)(3)(B).  An interim final rule is final for all purposes, including judicial review.  *Career College Ass'n v. Riley,* 74 F.3d 1265, 1268 (D.C. Cir. 1996); *Beverly Enters, Inc. v. Herman*, 50 F. Supp. 2d 7, 17 (D.D.C. 1999).

As stated by the Board, plaintiffs, and counsel for amici Clearing House at the August 21, 2013 status conference, and in the Board's Memorandum of Law in Support of Consent Motion for a Stay Pending Appeal, filed August 26, 2013, Dkt. # 42 ("Board Stay Mem."), all parties urge the Court to stay vacatur pending appeal.  A stay will preserve the status quo in the debit card industry while the Board's appeal proceeds, will prevent irreparable injury to plaintiffs in the form of a likely steep increase in interchange fees should the market return to its largely unregulated state prior to the Rule, and will avoid mooting the Board's appeal.  The Court's granting of a stay of vacatur pending appeal also will enable the D.C. Circuit to avoid having to consider for the first time on appeal an emergency motion for stay raising the same issues on which the Court heard the parties' views at status conferences on August 14 and 21, 2013, and about which the Court has already received full briefing.

1. Even in the absence of a stay pending appeal, however, this Court does not have authority to require the Board to issue an IFR to address the issues it identified in its Memorandum Opinion.  As a general matter under Fed. R. App. P. 4, the filing of a Notice of Appeal divests the district court of jurisdiction over matters involved in the appeal.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("[t]he filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.");

2

*Boumediene v. Bush*, 450 F. Supp. 2d 25, 32 & n.13 (D.D.C. 2006) (Leon, J.) (holding that the district court had no jurisdiction over cases as to which appeal had been filed); *see* Transcript of Status Conference, August 21, 2013, at 18 ("The Court: Once the appeal is filed, this Court loses jurisdiction"). While the Court retains authority to issue a stay, *see* Fed. R. Civ. P. 62, it does not have authority to require any particular action be taken during the period of a stay. *Princz v. Fed. Republic of Germany*, 998 F.2d 1 (D.C. Cir.1993) (per curiam) (appeal from denial of motion to dismiss on grounds of sovereign immunity divests district court of jurisdiction over entire case); *DSMC Inc. v. Convera Corp.*, No. 02-7118, 2002 WL 31741498 (D.C. Cir. Dec. 6, 2002) (denying stay of district court proceedings as "unnecessary" because, upon filing of notice of appeal, "exclusive jurisdiction to resolve [the matter] vests in this Court").

      2.      Indeed, even after a remand from the Court of Appeals, were there to be one, this Court's authority would be very limited. For agency actions found by a court to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the Administrative Procedure Act permits the Court only to "hold unlawful and set aside agency action." 5 U.S.C. § 706(2).[1] *See Center for Science in the Public Interest v. Regan,* 727 F.2d 1161, 1165 (D.C. Cir. 1984) (vacating portion of district court order requiring agency to reinstate rescinded rule within one year of date of order). As the D.C. Circuit has said, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus. Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943)); *see N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008) ("[T]he district court, sitting as a

---

[1] A court's authority to "compel" agency action is limited to cases in which agency action is found to have been "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a claim that has never been made here.

court in review of agency action under the Act and APA, should have done what a court of appeals normally does when it identifies an agency error: remand to the agency for further proceedings. . . . Only in extraordinary circumstances do we issue detailed remedial orders, and this maxim applies equally to district courts acting in an agency review capacity.").

       3.     As the Board has previously noted, Board Stay Mem. at 7-8, Defendant does not believe it is appropriate during the pendency of an appeal to promulgate an IFR implementing the Memorandum Opinion and Order. The promulgation of an IFR would be inconsistent with the Board's view, which it will argue to the Court of Appeals, that the initial Rule complies in all respects with section 920 of the Electronic Fund Transfer Act. As noted in the Board Stay Mem. at 8-15, it is the Board's view that the Memorandum Opinion and Order raise serious issues on the merits with regard to whether the Court failed to properly apply the *Chevron* Step One and Two analysis in these proceedings. Promulgation of an IFR implementing the Memorandum Opinion and Order would be inconsistent with this position on appeal.

     As stated in the Board Stay Mem. at 7-8, promulgation of an IFR would also likely moot the appeal, irreparably harming the Board's right to seek appellate review on these issues. *Center for Science in the Public Interest*, 727 F.2d at 1163-64; *Humane Society of the United States v. Kempthorne*, 527 F.3d 181, 182 (D.C. Cir. 2008). Having made the decision to appeal this Court's Order, the Board cannot "eviscerate" its appeal by adopting a rule that supplants the current one. *CSPI*, 727 F.2d at 1163.

     Moreover, as explained by Mr. Alvarez at the August 21 status conference,[2] Tr. at 7, promulgation of an interim rule while an appeal is pending would result in uncertainty and disruption in the debit card industry. If the Board were to promulgate an IFR implementing the

---

[2] These views are apparently shared by amici Clearing House, as discussed at the August 21st status conference. Tr. at 21.

Memorandum Opinion and Order while the appeal is pending, the new rule would replace the old Rule and the industry would be required to put new systems in place to implement the IFR. Such a process is costly and time consuming, especially with regard to network non-exclusivity and routing restrictions which would require substantial infrastructure changes by the industry. Should the Court of Appeals reverse in whole or in part the Court's Memorandum Opinion and Order, these systems would need to be changed again to comply with the D.C. Circuit's ruling and any subsequent rulemaking by the Board consistent with that opinion. Accordingly, promulgation of an IFR is not consistent with the parties' shared goal of maintaining the status quo ante in the debit card industry during the pendency of the appeal.

Finally, as suggested by counsel for amici Clearing House at the August 21, 2013 status conference, Tr. at 21-22, an interim final rule replacing vacated portions of the existing Rule could be the subject of legal challenge in U.S. district court in the District of Columbia or anywhere else in the country. Under the APA, any person "aggrieved" by "final agency action" or "[a]gency action made reviewable by statute," 5 U.S.C. § 704, is "entitled to judicial review . . . in a court of the United States." *Id*. § 702. Thus, were the Board to issue an IFR while the appeal of this Court's Order is pending – and if the appeal were for some reason not mooted – the Board could conceivably face litigation challenging both the existing Rule and the IFR, increasing the likelihood of inconsistent rulings.

For these reasons, the Board urges the Court instead to stay vacatur throughout the pendency of the appeal.

The Board believes, moreover, that it is premature to suggest a time-line for agency action (and a corresponding time limit for a stay of vacatur following remand) should the case be remanded to the Board following determination of the Board's appeal. Should the regulation be

5

remanded to the agency after appeal, the Board would have to decide whether to promulgate an interim final rule to comport with this Court's (or the Court of Appeals') rulings, or instead proceed under the normal notice and comment procedures of the Administrative Procedure Act. Issues the Board would need to address in making that determination include whether the data the Board has obtained provide an adequate basis for determining an amount that is "reasonable and proportional" to cost, whether technological or other changes to the routing infrastructure have occurred since the Board's 2010 proposal that are relevant to the proper determination of the network exclusivity and routing provisions of the Rule and whether such changes necessitate notice and comment prior to adoption of new regulations on those subjects, whether "good cause" for dispensing with notice and comment rulemaking exists, and how much time would be gained by promulgating a rule without prior notice and comment.

      This does not mean, however, that the Board will not be prepared to act promptly in the event the Board does not succeed on appeal.  As stated by Mr. Alvarez at the August 21, 2013 status conference, Tr. at 5, the Board shares this Court's view that finality and certainty with regard to implementation of section 920 are in the interest of all participants in the debit card industry.  The Board will move forward with its regularly scheduled survey of payment card networks and covered issuers to collect data regarding interchange fee revenue, covered issuer costs, and covered issuer and merchant fraud losses for calendar year 2013.  Under the authority of section 920(a)(3)(B), the Board may at this time gather data which will enable it to act expeditiously with regard to the Rule under a variety of scenarios including that the D.C. Circuit may reverse the Court's Memorandum Opinion and Order, may affirm the Order, or may take other action with regard to the Rule.  During the pendency of the appeal, the Board believes that it is appropriate to meet with interested participants and observers in the debit card industry to

hear views regarding: developments in the debit card industry; necessary actions should the Court's Memorandum Opinion and Order be affirmed on appeal; and implementation of the Rule going forward should the Court's decision be reversed.

## CONCLUSION

For the foregoing reasons, the Board urges the Court to stay vacatur during the pendency of appeal as the most appropriate remedy.

Dated:  August 28, 2013
         Washington, D.C.

                                                Respectfully submitted,

                                                  /s/ Yvonne F. Mizusawa
                                                Katherine H. Wheatley
                                                Associate General Counsel
                                                Yvonne F. Mizusawa
                                                Senior Counsel
                                                yvonne.f.mizusawa@frb.gov
                                                Joshua P. Chadwick
                                                Counsel
                                                Board of Governors of the Federal Reserve System
                                                20th & C Streets N.W.
                                                Washington, D.C. 20551
                                                (PH) (202) 452-3436
                                                (FAX) (202) 736-5615

                                                Attorneys for the Board of Governors of the
                                                Federal Reserve System